1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                ----oo0oo----

11

12   PHILLIP HOFF,                        No. 2:23-cv-00535 WBS JDP

13              Plaintiff,

14      v.                                ORDER

15   COUNTY OF SISKIYOU, an
     administrative body; ANDREA FOX,
16   ex-HOA manager; and DOES 1-10,
     inclusive,
17
                Defendants.
18

19                                ----oo0oo----

20          Plaintiff Phillip Hoff filed a third amended complaint

21   (Third Am. Compl. ("TAC") (Docket No. 21)) after the court

22   dismissed his second amended complaint with leave to amend (Order

23   (Docket No. 20)).  The court now considers defendants Siskiyou

24   County and Andrea Fox's motion to strike (Mot. to Strike (Docket

25   No. 28-1)) and motion to dismiss (Mot. to Dismiss (Docket No. 27-

26   1)).[1]

27   _____

28          [1]    Except where necessary, the court will not recite the

                                      1

1  I.   Motion to Strike

2          Defendants move to strike the TAC in its entirety

3  because it was filed seven days past the court's deadline.  (Mot.

4  to Strike.)  Plaintiff's TAC is clearly untimely.  However,

5  defendants do not allege any prejudice suffered as a result.

6  Accordingly, the court will not strike the TAC in its entirety on

7  this basis.[2]

8           Alternatively, defendants move to strike certain

9  portions of exhibits included with the TAC on the grounds that

10 they are irrelevant and immaterial.  (Mot. to Strike at 5.)

11 Specifically, defendants target the following documents: (1) A

12 document containing the text of California Government Code §

13 12956(b)(1) (TAC at 68); (2) a document excerpting from

14 Government Code § 12956.1(b)(l) and §§ 12956.2(a)(l), (b)(l), and

15 (c) (id. at 86); and (3) Grant of Right of Way (id. at 94).

16 (Mot. to Strike at 5.)

17          Federal Rule of Civil Procedure 12(f) provides that the

18 court may "strike from a pleading an insufficient defense or any

19 redundant, immaterial, impertinent, or scandalous matter."  Fed.

20 R. Civ. P. 12(f).  However, "[m]otions to strike should not be

21

22 relevant factual background or legal standards because they are
   already set forth in the court's order dismissing the second
23 amended complaint.  (See generally Order.)

24     [2]   This is the second time that plaintiff has failed to
   comply with the court's orders.  Previously, plaintiff's counsel
25 failed to appear for oral argument on defendants' motion to
   dismiss the second amended, complaint without prior notice to the
26 court or to defendants.  (Docket No. 18.)  Subsequent failures to
   comply with the court's orders will require plaintiff to show
27 cause why the court should not impose appropriate sanctions.

28

1  granted unless the matter to be stricken clearly could have no

2  possible bearing on the subject of the litigation or unless

3  prejudice would result to the moving party from denial of the

4  motion." Delgado v. Marketsource, Inc., No. 17-CV-07370-LHK,

5  2019 WL 1904216, at *3 (N.D. Cal. Apr. 29, 2019) (internal

6  quotations and citations omitted).

7          Defendants argue only that "Based on the allegations

8  and legal claims contained in the TAC, the following exhibits

9  appear immaterial and should be stricken." (Mot. to Strike at

10 5.) Defendants do not argue that they would be prejudiced if the

11 motion were denied. Accordingly, the court will deny defendants'

12 motion to strike.

13 II.  Motion to Dismiss

14     A.  Due Process (Claim 1)

15         The court previously dismissed plaintiff's due process

16 claim because he failed to allege (1) any facts establishing a

17 constitutionally protected property interest in a permit for his

18 second container, and (2) any facts showing that his permit was

19 revoked. (Order at 6-7.)

20         1.  Constitutional Right to Hardship Variance

21         Plaintiff now argues that he has a constitutionally

22 protected interest in a hardship variance for his second

23 container. Plaintiff applied for the hardship variance on

24 October 28, 2022 after the County allegedly revoked his permit,

25 which he alleges was granted verbally in January 2022. (TAC ¶¶

26 26, 28 & at 18.) The County closed plaintiffs' variance

27 application as incomplete on March 7, 2023. (Id. at 92.)

28         Plaintiff argues that the County is obligated to issue

3

the variance once certain conditions are met, and that plaintiff
in fact met "any and all requirements of the County Code."[3]  (Id.
¶¶ 45-47.)  However, it appears plaintiff's variance application
was denied because plaintiff refused to agree to an indemnity
agreement.  The Siskiyou County Planning Division's Variance
Application Guide (TAC ¶ 46 ("Appl. Guide")) states that all
applicants must submit an indemnification agreement along with
their variance applications.[4]  (Id. at 5-6.)  Plaintiff
ultimately refused to submit one.  (TAC ¶ 48 and at 92 ("The
Siskiyou County Community Development Department cannot proceed
with your project as a fully executed Agreement for
Indemnification is required.").)

        "Protected property interests are not created by the
Constitution, but by existing rules or understandings that stem
from . . . state law rules or understandings that secure certain
benefits and that support claims of entitlement to those
benefits."  Guatay Christian Fellowship v. Cnty. of San Diego,

---

[3]     Plaintiff fails to elaborate what those requirements
are.  Although plaintiff cites to Siskiyou County Ordinance § 10-
6.3602.195 (TAC ¶ 45), this section simply defines what a
"hardship variance" is: "a departure from the provisions of this
chapter relating to setbacks, side yards, frontage requirements,
and lot size, but not involving the actual use or structure."
Id.  It speaks nothing of how the County evaluates hardship
variance applications or what the requirements for approval are.

[4]     Further, the Application Guide clearly states that "[a]
variance from the terms of the county ordinance shall be granted
only when, because of special circumstances applicable to the
property, including size, shape, topography, location or
surroundings, the strict application of county code deprives such
property of privileges enjoyed by other property in the vicinity
and under an identical zoning classification."  (Appl. Guide at
2-3.)

4

1   670 F.3d 957, 985 (9th Cir. 2011) (citation omitted).  Here, the

2   applicable "state law rules or understandings" make it clear that

3   hardship variances, far from being an entitlement, are awarded

4   only in special circumstances and pursuant to an application

5   process, neither of which plaintiff satisfied.  Accordingly,

6   plaintiff fails to allege a due process claim relating to the

7   denial of the variance.

8              2.   Revocation of Permit

9         Plaintiff's sole new allegation regarding revocation is

10  as follows: "HOFF's permit that was verbally granted was

11  revoked."  (Id. ¶ 52.)  This, without more, cannot support a due

12  process claim even at the pleading stage because it "tenders

13  naked assertions devoid of further factual enhancement."

14  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

15        Plaintiff's claim is defective even if the court

16  assumes that plaintiff argues for a constructive revocation of

17  his permit, based either on the County's citation of his

18  container (id. ¶¶ 27, 30-31, 50) or the County's denial of his

19  subsequent hardship variance application (id. ¶¶ 29, 37-39, 48-

20  49, 53).  Plaintiff had an opportunity to challenge the citation

21  in an administrative hearing that plaintiff presumably attended

22  on September 21, 2022.  (Id. ¶ 30.)  This satisfies due process

23  here.  See Makdessian v. City of Mountain View, 152 F. App'x 642,

24  644 (9th Cir. 2005) (due process satisfied upon notice and

25  opportunity to be heard before deprivation of significant

26  property interest).  And, unlike his allegations regarding his

27  permit, plaintiff does not allege he was ever granted a variance

28  in the first place that was later revoked.  Instead, plaintiff's

1   own allegations show that his hardship variance application was

2   never even finalized because plaintiff ultimately refused to

3   agree to an indemnity, as required by Siskiyou County

4   regulations.  (TAC at 92; see § II.A.1, supra.)

5           The court therefore concludes that plaintiff fails to

6   sufficiently allege a constitutional property interest in a

7   permit or hardship variance for his second container, or that any

8   permit or variance was revoked in violation of due process.

9           Accordingly, the court will dismiss this claim.

10      B.    Unreasonable Seizure (Claim 2)

11          The court previously dismissed plaintiff's Fourth

12   Amendment claim because plaintiff failed to sufficiently allege

13   that the County interfered with his property rights.  (Order at

14   7-8.)  Plaintiff now affirmatively alleges that the County

15   effectively forced plaintiff to deed away his container to a

16   Buddhist temple, cut the gate and locks to his property, seized

17   his solar panels and umbrellas, and bulldozed trash onto his

18   land.  (Id. ¶¶ 31, 61-63.)

19          Defendants suggest that these allegations should not be

20   considered because they are "fanciful" and "frivolous" (Mot. at

21   10), but all plaintiff needs to allege at the pleading stage is

22   that there is "more than a sheer possibility that [the County]

23   has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678

24   (2009).  The court accordingly finds that plaintiff has pled a

25   Fourth Amendment injury "plausible on its face."  Bell Atl. Corp.

26   v. Twombly, 550 U.S. 544, 570 (2007).

27          However, plaintiff fails to allege facts sufficient to

28   attach liability to the County.  A local governmental unit may

not be held responsible for the acts of its employees under a

<u>respondeat superior</u> theory of liability.  <u>See</u> <u>Bd. of Cnty.</u>

<u>Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997); <u>Benavidez v. Cnty. of</u>

<u>San Diego</u>, 993 F.3d 1134, 1153 (9th Cir. 2021) ("'[A]

municipality cannot be held liable solely because it employs a

tortfeasor -- or, in other words, a municipality cannot be held

liable under § 1983 on a <u>respondeat superior</u> theory.'" (quoting

<u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658,

691 (1978)).  Rather, a plaintiff must demonstrate that the

alleged constitutional deprivation "may fairly be said to

represent official policy . . . ."  <u>King v. Cnty. of Los Angeles</u>,

885 F.3d 548, 558 (9th Cir. 2018).

Here, plaintiff fails to allege any facts suggesting

that any County policy or custom or direction from a decision-

making official was responsible for the acts that ground

plaintiff's Fourth Amendment claim.[5]  Plaintiff does appear to

argue in his opposition that defendant Andrea Fox had some

supervisory authority over the unnamed individuals who carried

out the alleged unlawful acts; that Fox herself "personally

participated in the constitutional violation;" that there exists

a sufficient causal connection between Fox's conduct and the

---

[5]     Plaintiff fails to allege that any specific person, in
whatever capacity, committed the acts.  Instead, he only alleges
that the County itself engaged in the specific acts interfering
with his property.  (TAC ¶¶ 32-34, 61-63.)  Defendants correctly
point out that Siskiyou County is an entity, not an individual
capable of trespass, property damage, and theft.  (Docket No. 32
(Reply) at 5.)  The court therefore draws the inference that
plaintiff's allegations of unlawful acts are directed to the
individual defendants, named and unnamed, in their official
capacities, but not in their individual capacities.

1    alleged constitutional violations; and that this therefore

2    comprised an official municipal act.  (Opp'n (Docket No. 31) at

3    16.)  However, plaintiff must allege facts showing that Fox is

4    "responsible for establishing final policy" consequently

5    attributable to the county.  Benavidez v. Cnty. of San Diego, 993

6    F.3d 1134, 1153 (9th Cir. 2021).

7        Accordingly, the court will dismiss this claim.

8        C.    Equal Protection (Claim 3)

9        The court previously dismissed plaintiff's "class of

10   one" equal protection claim because he failed to sufficiently

11   show that his neighbors were directly comparable to him in all

12   material respects.  (Order at 10.)  For example, the court found

13   that plaintiff's allegation that neighboring properties were

14   "crowded with trailers and motor homes in violation of other

15   County ordinances and/or regulations" left it unclear whether

16   neighboring parcels of land had any Conex containers subject to

17   the same permitting requirements.  (Id. at 9-10.)

18       Plaintiff now alleges that "several homes in and around

19   HOFF's land parcel" also have two or more Conex containers on

20   their property "without any permitting requirements, and no

21   variance hardships," (TAC ¶ 72) which the court construes to mean

22   that his neighbors who have more than one Conex container on

23   their property have not been cited even though they do not have

24   any required permits or hardship variances.

25       This is sufficient to state a claim at the pleading

26   stage.  All that plaintiff must allege now are facts showing that

27   (1) he has been "intentionally treated differently from others

28   similarly situated," and that (2) "there is no rational basis for

1  the difference in treatment." <u>Village of Willowbrook v. Olech</u>,

2  528 U.S. 562, 564 (2000).  Plaintiff alleges a few theories for

3  intentional mistreatment: comparative lack of political

4  connections (TAC ¶¶ 23, 71); his disability (<u>id.</u> ¶ 70); and

5  personal animus towards him harbored by Fox (<u>id.</u> ¶¶ 19-21).

6  Plaintiff also now alleges that several of his neighbors have two

7  or more containers on their properties, but without permits or

8  having been cited for a lack of permits.  (<u>Id.</u> ¶ 72.)  This is

9  enough to establish plaintiff's neighbors as apt comparators at

10 the pleading stage.

11         Accordingly, the court will not dismiss this claim.

12     D.   <u>Disability Discrimination</u> (Claim 4)

13         The court previously dismissed plaintiff's disability

14 discrimination claim because plaintiff did not allege any facts

15 showing that the County denied him his permit or variance on the

16 basis of his disability.  (Order at 11.)

17         Plaintiff's claim still fails for the same reason.

18 Plaintiff now alleges that Fox knew of his traumatic brain injury

19 (TAC ¶¶ 82, 86), but still fails to plead any facts to support

20 his conclusory allegation that "[t]he denial of the permit and

21 hardship waiver was by reason of [plaintiff's] disability."  (<u>Id.</u>

22 ¶ 89.)  Accordingly, the court will dismiss this claim.

23     E.   <u>Regulatory Taking</u> (Claim 7)

24         The court previously dismissed plaintiff's regulatory

25 taking claim because it was premised entirely on his inability to

26 obtain a permit for his second container.  (Order at 12.)

27 Plaintiff now alleges theft and trespass as additional bases for

28 this claim.  (TAC ¶ 111 ("The COUNTY's bulldozing of trash,

1    cutting of locks, and interfering with properties both personal

2    [solar panels, Conex containers, locks, umbrellas] and realty of

3    HOFF is akin to a regulatory taking."); see supra, at § II.B.)

4    The court will analyze plaintiff's takings claim solely as to

5    these new allegations.

6          The Takings Clause of the Fifth Amendment provides:

7    "[N]or shall private property be taken for public use, without

8    just compensation."  U.S. Const. amend V.  "As its text makes

9    plain, the Takings Clause does not prohibit the taking of private

10   property, but instead places a condition on the exercise of that

11   power.  In other words, it is designed not to limit the

12   governmental interference with property rights per se, but rather

13   to secure compensation in the event of otherwise proper

14   interference amounting to a taking." Lingle v. Chevron U.S.A.

15   Inc., 544 U.S. 528, 536-37 (2005) (citations omitted).

16         Here, plaintiff fails to allege any facts suggesting

17   that the County's alleged actions constituted lawful interference

18   with his property rights.  Neither does he allege any plausible

19   "public use" of his property that motivated the County's alleged

20   actions.  Instead, plaintiff's new allegations amount to nothing

21   more than a recitation of facts supporting his unreasonable

22   seizure claim.

23         Accordingly, the court will dismiss this claim.

24         F.   State Law Claims (Claims 5, 6)

25         The court previously dismissed plaintiff's claims for

26   financial elder abuse and negligence because plaintiff failed to

27   show that he presented these claims to the County pursuant to the

28   Government Claims Act, Cal. Gov. Code §§ 905, 945.4, 950.2.

1    (Order at 12-13.)  Plaintiff fails to do so again.[6]  Accordingly,

2    the court will dismiss this claim.

3         G.   Leave to Amend

4              Plaintiff shall have one final opportunity to amend his

5    complaint as to the dismissed claims.  As this will be

6    plaintiff's fourth opportunity to amend his complaint, the court

7    will not grant leave to add any additional claims or defendants.

8              IT IS THEREFORE ORDERED that defendants' motion to

9    strike (Docket No. 28) be, and the same hereby is, DENIED.

10             IT IS FURTHER ORDERED that defendants' motion to

11   dismiss (Docket No. 27) be, and the same hereby is, DENIED as to

12   plaintiff's equal protection claim (Claim 3).  Defendants' motion

13   to dismiss GRANTED as to all other claims.[7]  Plaintiff has leave

14   to amend his complaint as to the dismissed claims, but does not

15   have leave to add additional claims or additional defendants.

16   Plaintiff shall file a fourth amended complaint **within twenty**

17   **days** of the issuance of this order, if he is able to do so

18   consistent with this order.

19   Dated:  January 9, 2024

20                                   WILLIAM B. SHUBB
                                     UNITED STATES DISTRICT JUDGE

21

22        [6]    In his opposition, plaintiff appears to argue that
     presentation of his claims to the County should be excused
23   because it would be futile.  (Opp'n at 20-22.)  Not only do none
     of plaintiff's cited cases discuss excusal from the Government
24   Claims Act's presentation requirement; plaintiff also fails to
     allege any facts supporting his argument that presenting his
25   claims, as required by statute, would be in vain.

26        [7]    Defendants' Request for Judicial Notice (Docket No. 27-
27   2) is DENIED as moot because the court need not rely on the
     materials therein to reach its decision.

28
                                     11