UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PHILLIP HOFF,<br><br>            Plaintiff,<br><br>     v.<br><br>COUNTY OF SISKIYOU, an administrative body; ANDREA FOX, ex-HOA manager; and DOES 1-10, inclusive,<br><br>            Defendants. | No. 2:23-cv-00535 WBS JDP<br><br><br>ORDER |

----oo0oo----

Plaintiff Phillip Hoff has filed a fourth amended complaint (Fourth Am. Compl. ("Compl.") (Docket No. 36)) after the court dismissed without prejudice all but one of his third amended complaint's claims with leave to amend. (Order (Docket No. 35).) The court now considers defendants Siskiyou County and Andrea Fox's latest motion to dismiss.[1] (Mot. (Docket No. 36).)

---

[1] Upon consideration of the briefs of the parties, the court has determined that oral argument would not be of further assistance to the court. Accordingly, the motion is decided on

1

1  Except where necessary, the court will not recite the relevant
2  factual background or legal standards because they are already
3  set forth in the court's prior order.  (See generally Order.)
4  I.   Standing
5       Previously, plaintiff alleged that the County took his
6  Conex container and donated it to a Buddhist temple without his
7  approval.  (See Docket No. 21 at 32.)  Now, plaintiff clarifies
8  that the County's alleged acts comprising this lawsuit forced him
9  to donate his life savings, including his parcel of land, to said
10 temple in the year 2022.  (See Compl. at ¶¶ 2, 37, 103.)
11 Defendant now challenges plaintiff's standing to bring claims
12 related to property rights in the land parcel at issue.  (See
13 Opp'n (Docket No. 40-1) at 4.)
14      Under Article III of the U.S. Constitution, the
15 judicial power extends to "Cases" and "Controversies."  Courts
16 cannot decide legal disputes "in the absence of such a case or
17 controversy."  Already, LLC v. Nike, Inc., 568 U.S. 85, 90
18 (2013).  No principle is more fundamental to the judiciary's
19 proper role in the federal system.  Clapper v. Amnesty Int'l USA,
20 568 U.S. 398, 408 (2013).  This limitation requires that
21 plaintiffs have standing, that is "an actual injury traceable to
22 the defendant and likely to be redressed by a favorable judicial
23 decision."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).
24 Article III necessitates that an actual controversy exist
25 "through all stages of the litigation."  Already, LLC, 568 U.S.

---

the papers without oral argument pursuant to Local Rule 230(g),
the scheduled April 1, 2024 hearing on the motion is hereby
VACATED, and plaintiff's request to reschedule the hearing
(Docket No. 51) is moot.

at 91 (quotations omitted).  "A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id.  Put another way, a case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  Alvarez v. Smith, 558 U.S. 87, 93 (2009).

Every single one of plaintiff's claims is predicated on infringement of his property rights in the land parcel and allegedly related rights to certain permits and variances. Regardless of what genuinely did or did not happen before plaintiff deeded his property to the temple in 2022, "it is not enough that a dispute was very much alive when the suit was filed; . . . [t]he parties must continue to have a personal stake in the outcome of the lawsuit."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (citations omitted) (emphasis added). Accordingly, the court concludes that plaintiff's donation of his property extinguished any live controversy in which he still carries a personal stake.[2]

II. Due Process (Claim 1)

---

[2] Plaintiff argues that he still has standing to sue on behalf of the Nam Quang temple because he is a board member. (See Opp'n at 16-17.)  He accordingly asserts standing as an organizational plaintiff. (Id.)  Plaintiff gets it backwards: an organization may, under certain conditions, sue on behalf of its injured members pursuant to the doctrine of associational standing, not the other way around.  See Sierra Club v. Morton, 405 U.S. 727, 739 (1972) ("It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review.").

3

The court previously dismissed this claim because plaintiff failed to demonstrate a constitutionally protected property interest in a permit or a variance for his second Conex container.  (See Order at 3-5.)  The court also concluded that the September 21, 2022 administrative hearing regarding his citation provided him sufficient due process.  (See id. at 5-6.)

Plaintiff pleads no new facts changing this analysis.  As to the administrative hearing, plaintiff now alleges that he was not given an opportunity to decide on a "neutral" to preside over the hearing.  (Compl. ¶¶ 71-74.)  Plaintiff also alleges that, during the hearing, the "purported neutral" "muted" plaintiff's counsel twice while she was cross-examining Fox with questions prejudicial to the County.[3]  (Id. ¶ 36.)  However, plaintiff fails to provide any authority indicating that plaintiff has a constitutionally protected interest in selecting a "neutral" for such an administrative hearing, nor can the court find any.  Cf. Makdessian v. City of Mountain View, 152 F. App'x 642, 644 (9th Cir. 2005) (due process satisfied upon notice and opportunity to be heard before deprivation of significant property interest).  Neither does plaintiff further allege that he was materially deprived of an opportunity to be heard at the hearing, notwithstanding the two times that the presiding official allegedly muted plaintiff's counsel.

Accordingly, the court will dismiss this claim.

III. Unreasonable Seizure (Claim 2)

    A.    County

---

[3] The court presumes that the hearing was conducted remotely.

While plaintiff's previous allegations that the County cut his gate and locks to his property, seized his solar panels and umbrellas, and bulldozed trash onto his land asserted a Fourth Amendment injury plausible on its face, plaintiff failed to further plead facts that would attach liability to the County pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). The court accordingly dismissed this claim. (See Order at 6-8.)

That defect persists. Plaintiff now alleges that defendant Andrea Fox "executed Defendant County's official policy in cutting the gate locks to Plaintiff's property." (Compl. ¶¶ 26, 104.) Plaintiff also alleges that the County "seized" his land parcel in the sense that it "allow[ed] neighbors to grow meth on it, bulldoze trash and cut locks." (Id. ¶ 99.) However, plaintiff still fails to allege any actual facts suggesting a policy or custom of cutting residents' locks and permitting general lawlessness that negatively affected his property rights.[4]

B.  Fox

---

[4] Plaintiff's bare assertion of "Defendant County's official policy in cutting the gate locks to Plaintiff's property" (Compl. ¶ 104) does not suffice. In Ashcroft v. Iqbal, the Supreme Court held that "bare assertions" that "amount to nothing more than a formulaic recitation of the elements of a [ ] claim" are not entitled to "presumption of truth," and that the district court, after disregarding "bare assertions" and conclusions, must "consider the factual allegations in [a] complaint to determine if they plausibly suggest an entitlement to relief" as opposed to a claim that is merely "conceivable." 556 U.S. 662 679-80 (2009). The Ninth Circuit explicitly confirmed that this standard applies to pleading policy or custom for claims against municipal entities. See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) ("This standard applies to Monell claims and should govern future pleadings. . . ."). Plaintiff fails to meet that standard here.

5

Previously, the court noted that plaintiff did not plead his unreasonable seizure claim against any individual defendants. (See Order at 7 n.5.) Now, for the first time, plaintiff makes the following allegations specifically against Fox: she cut the locks and gates to plaintiff's land parcel (Compl. ¶¶ 26, 173); and she "yelled and screamed" at plaintiff about trash in November 2021 when she "confronted [him] at Swan Way," causing him extreme emotional distress and anxiety, which "meets the requirement of a search-and-seizure of an on-duty compliance manager of County constituting a threat, intimidation or coercion to Plaintiff because Fox lacked any probable cause" (id. ¶¶ 13, 15, 102).

Because plaintiff requests no relief that requires Fox to act in her official capacity as a Compliance Officer of Siskiyou County (see Compl. at 29-30), Fox is sued in her individual capacity. Accordingly, plaintiff must show that Fox acted under color of state law in order to establish a constitutional injury. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (individual-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law.").

A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). The Ninth Circuit has recognized, for example, that off-duty police officers do not act under color of state law if "'[a]t no

6

point [do they] purport to be acting as a policeman,' and even if the victims recognize[ them] as an officer, that recognition 'does not alone transform private acts into acts under color of state law.'" Naffe v. Frey, 789 F.3d 1030, 1036 (9th Cir. 2015) (citing Van Ort v. Est. of Stanewich, 92 F.3d 831, 839 (9th Cir. 1996)).

Here, plaintiff's allegations lead to the inescapable inference that it was personal animus between himself and Fox predating Fox's current position as Compliance Officer for Siskiyou County (see Compl. ¶ 4) that was the motivating force for injuries which he attributes to Fox currently.  For instance, plaintiff's complaint labels Fox as "an ex-HOA manager" and further alleges that Fox was the manager for the homeowner's association Klamath River County Estates Owners' Association Inc., of which plaintiff's parcel is a part.  (See id. ¶ 10.) Plaintiff also specifically mentions "animus from Defendant Andrea Fox as the then-KRCE-homeowner manager."  (Id.)

Finally, and most directly, plaintiff alleges that "Defendant Fox had a previous history of invidious discrimination against Plaintiff Phillip Hoff, stemming from Defendant Fox's time as Manager of the KRCE Homeowners Association since the year 2012 up until 2021 -- per information and belief.  During that time, Plaintiff Phillip Hoff and Defendant Fox have repeatedly clashed over various issues, and Defendant Fox plainly exhibited her own personal animus against Plaintiff Phillip Hoff."  (Id. ¶¶ 20-21.)

Plaintiff alleges no facts showing that Fox cut his locks and gate pursuant to any kind of authority stemming from

her position as Compliance Officer for Siskiyou County, or that such actions were even made possible by the position that Fox occupies -- in fact, plaintiff fails to even allege whether Fox's alleged cutting of the locks occurred at the same time as when she was a County employee.[5] He fails to do the same regarding the alleged altercation at Swan Way; bolstering this conclusion is plaintiff's allegation that he "believed Defendant Fox was on meth" during the altercation based on her behavior. (Id. ¶ 15.) See also Naffe, 789 F.3d at 1036 ("recognition [of official as official] 'does not alone transform private acts into acts under color of state law.'" (citing Stanewich, 92 F.3d at 839)).

Accordingly, the court will dismiss this claim.

IV. Equal Protection (Claim 3)

Under either a class-of-one or age/disability discrimination theory, an equal protection claim typically concerns governmental classifications that affect some groups of citizens differently than others. See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008).

A. Class of One

In order to show no rational basis for different treatment, a plaintiff "must demonstrate that the level of similarity between plaintiff and the persons with whom they compare themselves is extremely high." Hardesty v. Sacramento

---

[5] Neither does plaintiff allege that Fox held any supervisory authority pursuant to his supervisory liability argument, or that any of Fox's subordinates caused Fourth Amendment injuries due to Fox's enablement pursuant to her supervisory power. (See Opp'n at 35-37.) Rather, plaintiff alleges that Fox herself caused the alleged injuries directly.

8

1  Metro. Air Quality Mgmt. Dist., 935 F. Supp. 2d 968, 983 (E.D.
2  Cal. 2013) (Mueller, J.) (quotations and citations omitted)
3  (emphasis added); see Warkentine v. Soria, 152 F. Supp. 3d 1269,
4  1294 (E.D. Cal. 2016) (Seng, J.) (same).  Cf. Freeman v. City of
5  Santa Ana, 68 F.3d 1180, 1188 (9th Cir. 1995) ("Selective
6  enforcement of valid laws, without more, does not make the
7  defendants' action irrational") (emphasis added).

8    The court previously did not dismiss this claim because
9  plaintiff sufficiently alleged that his neighbors' adjoining
10 properties with two or more containers on them were apt
11 comparators.  (See Order at 8-9; Docket No. 21 ¶ 72 ("Several
12 homes in and around HOFF's land parcel have two and more Conex
13 containers without any permitting requirements, and no variance
14 hardships.").)

15   Now, however, plaintiff alleges more specifically that
16 he "has driven around the county to locate many land parcels with
17 two or more Conex container-container-boxes [sic] -- allegedly
18 with no second permit or citation from the county."  (Compl. ¶
19 119 (emphasis added).)  Two of these appear to be properties each
20 located at least ten miles from Klamath River Country Estates,
21 where plaintiff's parcel is located.  Others are "plumbing and
22 gas stations [that] have five (5) or more Conex container-
23 container-boxes [sic]."  (Id.)

24   There are many rational reasons why a gas station might
25 be treated differently than plaintiff's parcel with respect to
26 the regulation of Conex containers.  The same goes for parcels of
27 land located many miles away and possibly used or zoned for very
28 different purposes.  The only alleged commonalities between the

9

1 properties that plaintiff identifies now is that they host two or
2 more Conex containers, and they are all located in Siskiyou
3 County.  This does not come close to demonstrating the "extremely
4 high" level of similarity required by law.  See Hardesty, 935 F.
5 Supp. 2d at 983.

       B.   Elder/Disability Discrimination

            Plaintiff now also alleges that he is part of a class
of disabled and elderly citizens subject to disparate treatment.
(Compl. ¶ 113.)  However, plaintiff's sole allegation in support
is as follows: "Per information and belief, Defendants have a
pattern and practice of refusing to issue hardship variances to
individuals with disabilities and those similar in age to
Plaintiff."  (Id.)  This is patently a "formulaic recitation of
the elements of a [ ] claim," Iqbal, 556 U.S. at 679–80, which
fails to even facially establish the existence of a discrepancy
in the County's treatment of its elderly or disabled populations
as to Conex container permits.

            Accordingly, the court will dismiss this claim.

V.   Disability Discrimination (Claim 4)

            The court already dismissed this claim twice because
plaintiff failed to allege any facts showing that the County
denied him his permit or variance on the basis of his disability.
(See Order at 9; Docket No. 20 at 11.)

            The court must now dismiss it again.  Plaintiff's
latest amended complaint still contains no allegations showing
that defendants "denied [plaintiff] the benefits of the services,
programs, or activities of a public entity" because of his
disability.  See 42 U.S.C. § 12132.  Plaintiff still only brings

1    wholly conclusory allegations such as: "Defendant Fox harbored a
2    discriminatory animus against Plaintiff Phillip Hoff due to his
3    disability" (Compl. ¶ 22); and "Defendants also assumed that they
4    could treat Plaintiff arbitrarily and capriciously and that
5    Plaintiff, due to his disability, would not be able to take
6    action to stop them or otherwise vindicate his rights" (Id. ¶
7    133).
8         Accordingly, the court will dismiss this claim.
9    VI.  Regulatory Taking (Claim 7)
10        The court previously dismissed this claim because
11   plaintiff's allegations regarding permits and variances failed to
12   show that the County's alleged actions constituted lawful
13   interference with his property rights, and any plausible "public
14   use" of his property motivated the County's alleged actions.
15   (See Order at 9-10.)
16        Plaintiff now alleges that the County's regulation of
17   Conex containers on his property eliminated "all of or partial of
18   the beneficial use of his land parcel." (Compl. ¶ 161.)
19        A.   Total Taking
20        "[A] regulation which 'denies all economically
21   beneficial or productive use of land' will require compensation
22   under the Takings Clause." Murr v. Wisconsin, 582 U.S. 383, 384
23   (2017) (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 617
24   (2001) and Lucas v. South Carolina Coastal Council, 505 U.S.
25   1003, 1015 (1992)).
26        Plaintiff fails to make the threshold showing that an
27   inability to have a second Conex container on his parcel thereby
28   deprived it of all economically beneficial or productive use of

11

1  land.  Even if plaintiff's parcel is such that its sole
2  beneficial use is for storage, the parcel already has one validly
3  permitted Conex container.  What's more, the government does not
4  take a property interest when it merely asserts a "pre-existing
5  limitation upon the land owner's title."  Lucas, 533 U.S. at
6  1028-1029.
7       B.   Partial Taking
8            Any regulation causing anything less than a complete
9  elimination of economic value requires the ad hoc review under
10 factors set forth by the Supreme Court in Penn Central Transp.
11 Co. v. City of New York, 438 U.S. 104 (1978).  See Palazzolo, 533
12 U.S. at 617 (2001).  Under Penn Central, courts evaluate the
13 following three factors of "particular significance": (1) "[t]he
14 economic impact of the regulation on the claimant;" (2) "the
15 extent to which the regulation has interfered with distinct
16 investment-backed expectations;" and (3) "the character of the
17 governmental action."  Penn Central, 533 U.S. at 124.
18           Plaintiff's allegations fail to satisfy any prong of
19 the Penn Central test.  As to the first two factors, plaintiff
20 alleges no economic injuries that stem from his expectation and
21 subsequent failure to secure a permit.  As to the character of
22 the municipal regulation on Conex containers, plaintiff alleges
23 no imposition of the kind that courts typically recognize as
24 constitutionally intrusive, such as a physical government
25 invasion of the property.  See id. at 124 ("A 'taking' may more
26 readily be found when the interference with property can be
27 characterized as a physical invasion by government than when
28 interference arises from some public program adjusting the

12

benefits and burdens of economic life to promote the common good") (cleaned up).

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." Id. (cleaned up). Plaintiff's allegations fail to show that the County's permitting and variance policies are anything more than such an incidental regulation.

Accordingly, the court will dismiss this claim.

VII. State Law Claims: Financial Elder Abuse and Negligence
    (Claims 5 and 6)

Because the court dismisses plaintiff's federal claims, it no longer has federal question jurisdiction. Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." Id. at § 1367(c); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc) (district courts may decline sua sponte to exercise supplemental jurisdiction).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness and comity -- will point toward declining to exercise jurisdiction over the remaining state-law

13

claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The balance of factors in this case weighs toward declining to exercise supplemental jurisdiction. Judicial economy does not weigh strongly in either direction, as this action is still in the initial pleading stages. Convenience tips slightly in favor of the state forum, given the locations of Siskiyou County and plaintiff relative to this court. Fairness weighs equally toward both fora as there is no reason to doubt that a state court would provide an equally fair adjudication of the issues. Finally, comity weighs in favor of declining jurisdiction because all the remaining claims in the latest complaint are state law claims. These claims are of the kind of common property disputes routinely dealt with by the state courts, which are likely to have a better understanding than this court of the relevant state laws.

Accordingly, the court will decline to exercise supplemental jurisdiction over these claims.

VIII.   No Leave to Amend

Plaintiff has now amended his complaint four times. (See Docket Nos. 1, 6, 13, 21, 36.) The court is convinced that yet another attempt to plead these claims would be truly futile, and accordingly will not give plaintiff leave to amend further.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 40) be, and the same hereby is, GRANTED. Claims 1, 2, 3, 4, and 7 are dismissed with prejudice. Claims 5 and 6 are dismissed pursuant to the provisions of 28 U.S.C. § 1367(c), without prejudice to plaintiff's right to refile its

remaining state law claims in state court.[6]

Dated:   March 29, 2024

_William B. Shubb_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6] Defendants' Request for Judicial Notice (Docket No. 40-2) is denied as moot.